# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ENID MCCORMACK, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   No. 4:10-CV-1068 CAS |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

## FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

This matter is before the Court following a one-day bench trial. Having considered the pleadings, trial testimony and exhibits, the Court hereby makes and enters the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. This action was filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., arising out of injuries sustained by plaintiff Enid McCormack on March 19, 2009, as she exited the Creve Coeur Post Office (the "post office") located at 331 N. New Ballas Road, Creve Coeur, Missouri. (Am. Compl. ¶ 3; Joint Stipulation of Uncontested Facts ("Stipulated Facts") ¶¶ 3-4; Tr. 5).

2. Plaintiff lived a few miles from the post office. Prior to March 19, 2009, she had been to the post office many times, likely several hundred times. (Tr. 21-23, 43).

3. The post office is owned and operated by the United States Postal Service, and its employees are employed by the United States Postal Service. (Stipulated Facts ¶ 2).

4. On March 19, 2009, plaintiff was leaving the post office, and she began to walk through a Series 7100 EasyAccess door ("vestibule door"), which was standing open at the time in

the vestibule lobby area. The door automatically began to close while plaintiff was in the path of the door. She fell to the ground and suffered injuries, including a fractured right hip. (Stipulated Facts ¶ 4).

5. Plaintiff was taken by ambulance from the post office to St. Luke's Hospital where she received medical care for her injuries and hip. (Stipulated Facts ¶ 5).

6. The vestibule door is a "handicap-assist powered door" and each of the four vestibule doors has a mechanical device referred to as an "auto door operator" and each door operates individually. (Tr. 102-103; Def. Ex. B).

7. As a customer either enters the post office or exits the post office, there is a red button to push if the individual needs assistance having the door open. If no assistance is needed, the individual does not push the red button, but pushes the door handle. The pressure on the door handle will open the door and open it for a period of time, then the door closes automatically. (Tr. 90-91; Pl. Ex. 5; Def. Ex. F1).

8. The vestibule doors are "low energy doors" and the push-button operators are designed only to assist customers who needs assistance in opening the door. (Tr. 104-05).

9. Each of the vestibule doors had a decal containing the universal handicap symbol (i.e., a person in a wheelchair) and the wording "MANUAL/AUTOMATIC DOOR." There is no requirement in the installation manual that any other decal be placed on the vestibule doors. (Tr. 107-09; Def. Ex. B, § G).

10. On the door jamb of each vestibule door, there is a decal entitled "HORTON AUTOMATICS DOOR DAILY SAFETY CHECK." The decal is recommended by the manufacturer to be installed on the door for the benefit of the door owner. (Tr. 109; Def. Ex. B, 700.10).

11. Prior to March 19, 2009, plaintiff never had any problem entering or leaving the post office through the vestibule doors. (Tr. 43-44).

12. On the evening of March 19, 2009, plaintiff went to the post office to mail a package. She entered the post office at approximately 6:55 p.m., which was five minutes before closing. (Tr. 23, 45-46).

13. After completing her business in the customer service area of the post office, plaintiff began to leave the facility. She testified that normally she would exit the post office through the exit door on the right "because usually you stay to the right." (Tr. 51-52).

14. On March 19, 2009, as plaintiff exited the door of the customer service area, she saw that the left vestibule door, the entrance door, was open and she exited through it. (Tr. 24-25).

15. Plaintiff saw that the left vestibule door was "wide open" "in[ward] towards the lobby." (Tr. 24-25). Plaintiff assumed that the left vestibule door was "propped open," and assumed that "the other doors were locked or [post office employees] were locking them at the time." (Tr. 49-51). Because the two right-hand doors were closed, she "figur[ed] this is the way out . . . just went through to leave quickly so they could finish locking up." (Tr. 49-51). Plaintiff did not know if the right vestibule doors were locked because she did not try to go out the doors on the right. She testified that she "saw the one door open, it was like one minute to seven at that point, and [she] went out that door." (Tr. 50).

16. Plaintiff knew that the door on the right was the exit door. (Tr. 52). On March 19, 2009, she made the decision to go out the door she believed was propped open. (Tr. 51). No employee from the postal service directed plaintiff out the left vestibule door, and there was nothing advising plaintiff that the post office was closing and patrons should use the left vestibule door. (Tr. 52).

17. Plaintiff did not see any warning signs, including the universal handicap decal, on the left vestibule door indicating that it was the entrance or that she should not exit that door. (Tr. 36). She stated that because the door was wide open, she would not have seen any signs on that door. (Tr. 36). Plaintiff also testified that if there was a sign on the front of the left vestibule door that said "Do Not Exit," she would not have seen it because the door was open. (Tr. 55).

18. When facing the vestibule doors from inside the post office, the inside-right vestibule door has an overhead, illuminated, red exit sign above it and the outer-right vestibule door has an overhead, illuminated, red exit sign above it. (Def. Ex. F-1). There is also a red, illuminated exit sign on the wall to the immediate right of the right vestibule door, on the same horizontal plane as the other illuminated red exit signs. (Def. Ex. F-1). These are emergency signs like those required by building code to be placed over all emergency egress doors. (Tr. 111-12). These exits signs were not over the inside-left or outer-left vestibule doors because those doors were not intended to be egress doors. (Tr. 112).

19. When plaintiff proceeded through the left vestibule door, it had not begun to close. Plaintiff's first indication that the door was closing was when it hit her and knocked her to the ground. The door hit plaintiff behind her left shoulder, and knocked her onto her right side. (Tr. 26-27).

20. David Bohn, Postal Service Manager of Customer Services, ran the day-to-day operations at the post office. (Tr. 79). The vestibule doors were under Mr. Bohn's management and control. (Tr. 80). His duties included a walk around the floor each morning to inspect the facility before the day started, including going in and out of the vestibule doors. (Tr. 91).

21. Mr. Bohn testified that the left vestibule door was not checked on the day of the accident. (Tr. 81). The doors were not checked daily for the speed and force with which they

closed. The doors were also not checked daily for the amount of time the door would stay open before automatically closing. The doors were not checked on a regular basis by the post office between 2009 and 2010. (Tr. 81-84).

22. If there was a problem with the vestibule doors, Mr. Bohn or one of his supervisors would call maintenance, located at the Downtown St. Louis Post Office, and have the maintenance staff inspect and fix the doors. (Tr. 92). During his daily walk-arounds, Mr. Bohn determined whether the vestibule doors were safe for customers. (Tr. 97).

23. During the time Mr. Bohn was the manager of customer services at the post office prior to March 19, 2009, he did not receive any complaints from customers regarding the vestibule doors. (Tr. 94).

24. Patricia Fogal, a custodian at the post office for eleven years, was in charge of cleaning the glass in the vestibule doors every day. (Tr. 124). As a result, she went in and out the vestibule doors every day. (Tr. 124-25). If the doors were not operating properly, she would report it to her supervisor, and a work order would be sent to maintenance, located at the Downtown St. Louis Post Office. (Tr. 125).

25. Ms. Fogal never received any complaints from any customers regarding the operation of the vestibule doors. (Tr. 126).

26. The Installation Instructions and Owners Manual for the vestibule doors contained a chart from the American National Standards Institute ("ANSI") for opening speed and closing speed. (Tr. 113; Def. Ex. B, § E).

27. No evidence was presented that the vestibule doors were not in compliance with the ANSI chart. No evidence was presented that the vestibule doors malfunctioned or were defective

on March 19, 2009. No evidence was presented that the vestibule doors operated in any other way than as designed.

28. Mr. Michael Schech, the Architect/Engineer for the U.S. Postal Service, testified that he had "no idea" whether a door closing with the proper ANSI force would knock a 100-pound person to the ground. (Tr. 11; Schech Dep. 32-33; Tr. 121-22). He had no idea how many "pound feet" (the measure of force) it would take to knock a person over. (Tr. 11; Schech Dep. 33).

29. Plaintiff exited through the wrong door. (Tr. 48; Def. Ex. E). She exited through the entrance. (Id.). Had plaintiff exited through the proper door, the door would not have closed on her from behind. Entering and exiting in the proper pathway allows the doors to open out and away from a person as they walk through them. (Tr. 115-16). If a person is walking through the proper door in the proper direction, they would see the door as it closed. (Tr. 115).

30. From the time the post office was built in 1992 through March 19, 2009, there were no reports of anyone other than plaintiff being knocked down as a result of the door automatically closing. (Tr. 94).

## CONCLUSIONS OF LAW

This Court has jurisdiction pursuant to 28 U.S.C. § 1346(b). In a case filed pursuant to the FTCA, the court applies the law of the state in which the acts complained of occurred. Goodman v. United States, 2 F.3d 291, 292-93 (8th Cir. 1993) (citing 28 U.S.C. § 1346(b)). In this case plaintiff's claims are based on her fall at the Creve Coeur post office in Creve Coeur, Missouri. Accordingly, the Court will apply Missouri law.

### A.  Negligence (Count I)

In Count I, plaintiff alleges the post office breached its duty of ordinary care to keep the premises safe for its customers. Specifically, plaintiff argues the post office was negligent for (1)

failing to check and monitor the door to ensure it did not close with such speed and force as to strike a person and knock them down (Am. Compl. ¶ 7(a)-(c)); and (2) failing to adequately warn plaintiff that the open left-hand door would automatically shut on her as she walked through (Am. Compl. ¶ 7(g)-(h)).  The Court will review the evidence under the two similar theories of negligence: (1) negligent failure to maintain; and (2) negligent failure to warn.

### (1) *Negligent Maintenance of Doors*

"In an action for negligence, plaintiff must establish that defendant had a duty to plaintiff, that defendant failed to perform that duty, and that defendant's breach was the proximate cause of plaintiff's injury."  Hecker v. Missouri Prop. Ins. Placement Facility, 891 S.W.2d 813, 816 (Mo. 1995).  To recover damages, plaintiff is required to plead and prove that defendant's negligence was the cause of her injury.

The undisputed evidence establishes the doors were under the control of the post office, and the post office was responsible for maintaining the doors.  The post office had a duty to maintain the doors in a reasonably safe condition.  (Stipulated Facts ¶ 2; Tr. 10; Schech Dep. 26-27).

Plaintiff produced evidence that the instructions for the operation of the doors stated: "Advise owner to check door daily for safety — speed, force and time delay."  (Tr. 118; Govt. Ex. B at 700.10).  Additionally, a safety check decal was to be placed on the door jamb in view of the owner, telling the owner to:

1. Check daily for proper operation including door speed and time delay.
2. Discontinue door operation immediately upon malfunction.
3. Notify service agency for repair.
4. Consult your owners manual for proper safety procedures.  If you need a copy, call or write.

Id.

The postal employees testified that they did no formal tests to check speed, force, and time delay of the doors. (Tr. 83, 85, 119). Mr. Bohn, the customer service manager, walked around the premises daily before customers arrived, and determined whether the doors were safe for customers to enter and exit. (Tr. 97). The postal service was unaware of the speed and force of the door on March 19, 2009. Nor did they know how long the door was set to stay open. (Tr. 119).

The Court will assume, without deciding, that the postal service was negligent in its inspection and maintenance of the doors. The Court concludes, however, that plaintiff failed to establish the requisite causation to prove negligence. Proving causal connection between the allegedly negligent act and injury requires a showing of two things: causation in fact and proximate cause. See Koerber v. Alendo Bldg. Co., 846 S.W.2d 729, 730 (Mo. Ct. App. 1992). If plaintiff can prove her injury would not have happened "but for" the postal service's negligence or if the postal service's "conduct is a substantial factor in bringing about the harm," plaintiff can prove causation in fact. Id. at 731. As for proximate cause, "the general test for proximate cause is whether the injury is the natural and probable consequence of the defendant's negligence." Shifflette v. Missouri Dep't of Natural Res., 308 S.W.3d 331, 334 (Mo. Ct. App. 2010). A finding of proximate cause must be based on probative facts, not on mere speculation and conjecture. Id. Importantly, "the mere fact that an injury follows negligence does not necessarily create liability; a plaintiff must show the negligence was the proximate cause of the injury." Boggs ex rel. Boggs v. Lay 164 S.W.3d 4, 18 (Mo. Ct. App. 2005).

Although plaintiff presented evidence that the postal service conducted no daily formal tests to check the speed, force, and time delay of the doors, plaintiff has presented no evidence of any malfunction of the postal service's door. While the doors might not have been inspected prior to

March 19, 2009, plaintiff has failed to adduce any evidence establishing the lack of inspection caused her fall.

Mr. Schech testified that there was no reason to believe that the doors were not in compliance with the requirement of the American National Standards Institute ("ANSI") concerning the amount of force required to prevent the doors from opening or closing and the kinetic energy (i.e., speed) of the doors. (Tr. 113-15). In fact, the Court has no information from which it can determine that doors in compliance with the ANSI requirements would not knock down an individual exiting through the entrance as it timed shut. (Tr. 10-13; Schech Dep. 32-33). Based on plaintiff's evidence, the Court cannot determine that the doors were operating improperly on March 19, 2009, or that properly operating doors would not have caused plaintiff's injury. Plaintiff has not met her burden to prove by a preponderance of the evidence that the postal service's negligence in maintaining the doors was a substantial factor in bringing about her injury. Nor has plaintiff shown by a preponderance of the evidence that her fall was the natural and probable consequence of the negligent maintenance of the doors. Without any probative facts, the Court would be engaging in speculation and conjecture if it concluded the postal service's maintenance of the doors caused plaintiff's fall.

For this reason, the Court finds that plaintiff has not met her burden of proof for her claim of negligence based on defendant's alleged negligent maintenance and inspection of the post office doors.

### (2) *Negligent Failure to Warn*

Plaintiff's negligence claims are also based upon the postal service's alleged failure to adequately warn her that the open left-hand door would automatically shut on her as she walked through. (Am. Compl. ¶ 7(g)-(h)). Generally, the "duty owed to an invitee by the owner of the

premises is the exercise of reasonable and ordinary care in making the premises safe." Smith v. Wal-Mart Stores, Inc., 967 S.W.2d 198, 203-04 (Mo. Ct. App. 1998). The Missouri Supreme Court has adopted the Restatement of Torts § 343, which provides that a possessor of land is liable for injuries caused by a condition on the land only if the possessor:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Harris v. Niehaus, 857 S.W.2d 222, 225-26 (Mo. 1993).

Under the second element of the test, if the dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, a possessor does not breach the standard of care "unless the possessor should anticipate the harm despite such knowledge or obviousness." Id. at 226 (citing Restatement (Second) of Torts § 343A(1)). "As a general matter, therefore, a possessor's actions do not fall below the applicable standard of care if the possessor fails to protect invitees against conditions that are open and obvious as a matter of law." Harris, 857 S.W.2d at 226.

Plaintiff alleges that the postal service did not adequately warn her that the open left-hand door (i.e., the entrance door) was an automatic door that would automatically close on her from behind as she exited through it. (Am. Compl. ¶ 7(g)-(h)). Plaintiff's theory presumes that the automatically-closing entrance door created a dangerous condition that she could not have reasonably discovered. Therefore, plaintiff contends the postal service failed to exercise reasonable care in that it did not adequately warn her of the condition.

Plaintiff's theory fails for two separate reasons. First, assuming that an open automatically-closing entrance door creates a dangerous condition to invitees who exit though that door, the danger is an open and obvious danger precluding liability as a matter of law. Second, even if it were not an open and obvious danger, the postal service exercised reasonable care in warning plaintiff of the automatically-closing door.

Based on the facts of this case, the Court finds that the danger attendant to the automatically-closing entrance door was open and obvious. As the Missouri Supreme Court has stated:

> The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pit-falls, and the like, in that they are not known to the invitee, and would not be observed by [the invitee] in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under not duty to reconstruct or alter the premises so as to obviate known and obvious dangers.

Scheerer v. Hardee's Food Sys., Inc., 92 F.3d 702, 709 (8th Cir. 1996) (quoting Dixon v. General Grocery Co., 293 S.W.2d 415, 418 (Mo. 1956)).

The Court finds that any danger attendant to the open automatically-closing entrance door was obvious, and that the risk of harm existed only because of plaintiff's failure to exercise ordinary care. The doors had been installed during the construction of the post office in 1992, and until plaintiff's fall on March 19, 2009 the post office had no complaints of injuries associated with the automatically-closing entrance door. (Tr. 94). The postal service could reasonably anticipate that any person using the Creve Coeur post office would have acquired sufficient life experience to know that a manual automatic door will automatically close after a period of time. Harris, 857 S.W.2d at 227. The Court finds that the postal service could reasonably rely on their customers to see and

appreciate the risk presented by the open automatically-closing manual door.[1] Moreover, the Court finds that the postal service could reasonably rely on its customers to properly exit through the exit doors. In fact, plaintiff testified that she knew the proper way to exit was through the exit doors on the right, and had done so several hundred times. (Tr. 43, 52). The Court finds that the postal service's failure to warn that the automatically-closing entrance door might close on patrons if they attempted to exit through it does not fall below the standard of care.

Even if the facts suggested that the open automatically-closing entrance door created a dangerous and undiscoverable condition, plaintiff did not prove by a preponderance of the evidence that the post office failed to exercise reasonable care to protect her against the danger. Both the outside and inside entrance doors had affixed a special decal with the universal handicap sign and the words "MANUAL/AUTOMATIC DOOR." The signs were visible from both sides of both swing doors. Both the outside and inside exit doors had affixed the same special decal, visible from both sides of both doors. In addition, the outside and inside entrance doors both had affixed a sign that read "ENTRANCE," which was visible to patrons as they were exiting the building. While the "ENTRANCE" sign on the interior entrance door was not visible when the door was open into the lobby, the "MANUAL/AUTOMATIC DOOR" sign on the door was affixed to both the interior and exterior of the entrance door, and would be visible to anybody exiting through the door. Likewise,

---

[1]This case is distinguishable from Price v. Frederick C. Smith Clinic, 2010 WL 3732230 (Ohio Ct. App. Sept. 27, 2010), cited by plaintiff. In Price the door at issue was an automatic sliding door that closed prematurely on a patron. The court found that common experience with these types of doors "does not suggest that they are likely to close in on a person," and therefore the risk of a prematurely closing sliding door was not open and obvious. Id. at *7. In our case, the door at issue was not a prematurely closing automatic sliding door, but a manual automatic door. Manual automatic doors operate using a touch button, and stay open for a period of time before timing shut. The Court finds that common experience with these types of doors suggests that they close after a certain period of time.

there were two illuminated red EXIT signs above the interior exit door, one of which had an arrow pointing to the door. Another illuminated red EXIT sign was mounted above the exterior exit door.

The Court finds that the "MANUAL/AUTOMATIC DOOR" signs affixed to both sides of all four doors provided sufficient warning to customers regarding the existence of the automatic doors. Further the Court finds that the "ENTRANCE" and "EXIT" signs visible to customers exiting the premises provided sufficient direction to lead customers through the appropriate exit doors. Therefore, even assuming the automatically-closing entrance door posed an undiscoverable danger to patrons of the post office, the Court finds that the postal service used reasonable care to warn customers of the automatically-closing doors.[2]

For these reasons, the Court finds that plaintiff has not met her burden of proof for her claim of negligence based on defendant's alleged failure to warn that the open entrance door would automatically shut on her as she exited through it.

**B.**     ***Res Ipsa Loquitur* (Count II)**

In Count II, plaintiff alleges negligence based on the theory of *res ipsa loquitur*. The elements of this claim are that (1) the incident resulting in the injury is of the kind which ordinarily does not occur if those in charge use due care; (2) the incident is caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident. Bass v. Nooney Co., 646 S.W.2d 765, 768 (Mo. banc 1983). The doctrine is used in cases

---

[2]Finally, the evidence at trial showed that plaintiff knew exactly which door she was to exit, and had exited through the proper door without incident hundreds of times. (Tr. 43, 52). She testified that she exited through the open automatically-closing entrance door because she mistakenly assumed it had been propped open. Therefore, even if additional signs had been placed warning plaintiff "Do Not Exit"(as plaintiff's counsel suggested), the evidence does not show that the post office could have warned plaintiff in a way that would have given additional information. See Harris, 857 S.W.2d at 228 (Benton, J., concurring) (citing Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo. 1992)).

in which it is not clear exactly what caused the injury, but all the probable causes are within the control of defendant. Sides v. St. Anthony's Med. Ctr., 258 S.W.3d 811, 814 (Mo. 2008). The argument is simple: the negligence speaks for itself; if defendant were not negligent, plaintiff would not have been injured. "The ultimate burden of proof, as always, remains with the plaintiff to convince the jury that a defendant was negligent and that such negligence caused the plaintiff's injury." Sides, 258 S.W.3d at 820.

The Court concludes plaintiff has not met her burden of proof with respect to the first element of her *res ipsa loquitur* claim. She has not shown that her fall would not have occurred in the absence of negligence by the post office. Although several courts have concluded that "[a]utomatic doors do not, in the ordinary course of things, cause injury to those who pass through them," these cases involve injuries to individuals who are properly passing through the appropriate door, and the door closes prematurely. In these cases, when an individual sustains an injury, it is "unusual" and "strongly suggests a malfunction attributable to negligence." Landmark Hotel & Casino, Inc. v. Moore, 757 P.2d 361, 364 (Nev. 1988); see also Stone v. Courtyard Mgmt. Corp., 353 F.3d 155, 161 (2d Cir. 2003); Price v. Smith Clinic, 2010 WL 3732230, *9 (Ohio Ct. App. Sept. 27, 2010); Brown v. Scrivner, Inc., 488 N.W.2d 17, 19 (Neb. 1992); Trefney v. National Super Markets, Inc., 803 S.W.2d 119, 121 (Mo. Ct. App. 1990).

In Trefney, for example, a customer sued National supermarket on the theory of *res ipsa loquitur* after she was injured by an automatic door. As plaintiff was leaving the supermarket, she was partially through the outward-swinging automatic door, when the door swung backward, striking her in the chest and knocking her to the ground. Trefney, 803 S.W.2d at 120. After the accident, the assistant manager of the store notified the company that serviced the door about the problem. The company inspected the door and found the "Vision Pulse" stick, which controlled the

door, was inoperable. The company replaced the Vision Pulse stick and the "end caps" on the door. Id. at 121. Because the precise cause of the accident was not known, the trial court submitted the case to the jury on the theory of *res ipsa loquitur*, and the jury found in favor of plaintiff.

On appeal, National argued the evidence did not support submitting the case to the jury. National argued that plaintiff did not prove that the incident was of the kind that ordinarily did not occur in the absence of negligence. The appellate court disagreed. It found that the evidence showed the assistant manager had not done a complete walk through of the door on the date of the accident; the maintenance company found the Vision Pulse stick was inoperable; and within two days of the accident, the Vision Pulse stick and the end caps were replaced. Based on this evidence, the jury could reasonably conclude that the closing of the automatic door on plaintiff was "the type of sudden, unusual malfunction which would not normally occur in the absence of [the supermarket's] negligence." Id. at 121. There was substantial evidence to establish the first element for the application of the *res ipsa loquitur* doctrine.

Here, unlike the cases plaintiff cites, plaintiff was not properly passing through the appropriate door as it closed prematurely. Plaintiff was exiting through an automatically-closing entrance door. It is reasonable to conclude that the accident occurred because the entrance door timed shut as plaintiff was exiting. Because she was exiting through the entrance, when the door timed shut, it closed from behind such that plaintiff had no warning it was closing. The Court has no evidence from which it could determine the door malfunctioned—there is no indication that the door closed prematurely; no indication of prior malfunction; no prior injuries to postal customers caused by the automatic doors; and no evidence that the door needed to be repaired. In fact, plaintiff offered no evidence that a door operating within the ANSI standards for speed, force, and time delay would not have caused an individual exiting through the entrance to fall down as the entrance door

timed shut. (Schech Dep. 32-33). Without any evidence in the record as to whether a properly operating automatic entrance door would have knocked down a customer exiting through it, the Court is without any legally sufficient basis for inferring the negligence of the post office caused plaintiff's injuries.

As the Missouri Supreme Court has stated, under a theory of *res ipsa loquitur*, "[t]he ultimate burden of proof, as always, remains with the plaintiff to convince the [fact finder] that a defendant was negligent and that such negligence caused the plaintiff's injury." Sides, 258 S.W.3d at 820. Although the post office's negligence could be responsible for the door knocking plaintiff to the ground, the record does not establish that such negligence is more likely the cause than other possible causes. For these reasons, the Court finds that plaintiff has not met her burden of proof for her claim of negligence based on the doctrine of *res ipsa loquitur*.

For all the foregoing reasons, the Court will enter judgment in favor of defendant United States of America and against plaintiff Enid McCormack on both counts of her first amended complaint.

An appropriate judgment will accompany this memorandum and order.

                                          **CHARLES A. SHAW**
                                          **UNITED STATES DISTRICT JUDGE**

Dated this  16th  day of March, 2012.